[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No.  13-11597
Non-Argument Calendar
_____

D.C. Docket No. 8:11-cv-02126-VMC-AEP

AMADOU WANE,

Plaintiff-
Counter Defendant-
Appellant,

MERLANDE WANE,

Plaintiff-
Counter Defendant,

versus

THE LOAN CORPORATION,

Defendant-Appellee,

BANKUNITED, N.A.,

Defendant-
Counter Claimant-
Appellee,

FEDERAL DEPOSIT INSURANCE CORPORATION,
AS RECEIVER OF BANKUNITED FSB,

Defendant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 14, 2014)

Before PRYOR, MARTIN, and JORDAN, Circuit Judges.

PER CURIAM:

Amadou Wane, proceeding *pro se*, appeals the district court's orders dismissing his claim for rescission under the federal Truth-in-Lending Act, denying his motion for summary judgment to quiet title, and granting BankUnited's motion for summary judgment for breach of contract and money lent. [1] Having considered the parties' briefs and the record, we affirm. [2]

## I

On August 10, 2011, the Wanes filed an amended complaint in state court, seeking to quiet title on their residence against The Loan Corporation ("TLC"), BankUnited, N.A., and BankUnited FSB.[3] The Federal Deposit Insurance

---

1    Although both Amadou Wane and his wife, Merlande Wane, were parties in the suit before the district court, Mr. Wane is the only appellant here.

2    In his notice of appeal, Mr. Wane also appealed from the district court's order denying his motion for default judgment against TLC. Because Mr. Wane has failed to addreess the issue in his briefs, however, he has abandoned this claim. *See Access Now, Inc. v. Southwest Airlines Co.,* 385 F.3d 1324, 1330 (11th Cir. 2004) ("[T]he law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

3    There are two entities with similar names in this case—BankUnited FSB and

Corporation, as receiver of BankUnited FSB, was also named as a defendant. On September 16, 2011, the FDIC removed the Wanes' state court action to federal court. The district court ordered the Wanes and the FDIC to mediation, which resulted in a settlement. Pursuant to the Wanes' stipulation, the district court dismissed the claims against the FDIC with prejudice.

On March 15, 2012, the Wanes filed a second amended complaint against TLC and BankUnited, alleging that the mortgage and promissory note were unenforceable and that they had rescinded the agreement within the statute of limitations. On March 30, 2012, BankUnited filed a motion to dismiss the Wanes' second amended complaint. It argued that the Wanes could not prevail on a claim for rescission of the mortgage because the assignment of the mortgage from BankUnited FSB to the FDIC was involuntary, shielding BankUnited from liability. When such an involuntary assignment is made, BankUnited argued, all subsequent assignees receive protection from liability as the original assignee under 15 U.S.C. § 1641(a). BankUnited further argued that the Wanes' attempt at rescission should be dismissed because the Wanes failed to allege any facts to state a claim for rescission under the TILA. BankUnited also argued that the district

---

BankUnited, N.A. BankUnited FSB was closed by the State of Florida Office of Financial Regulation, and the FDIC was appointed as receiver for BankUnited FSB. We will refer to the active corporation, BankUnited, N.A., as BankUnited, and refer to BankUnited FSB as BankUnited FSB.

court should dismiss the Wanes' claim to quiet title.

Relevant to the rescission claim are the two good faith estimates ("GFEs"), the two TILA forms, and the HUD-1 form that Mr. Wane signed. Mr. Wane signed the first GFE form and the TILA disclosure statement on August 16, 2006.  Mr. Wane signed a second GFE and another TILA disclosure statement on September 15, 2006—the date of closing. Both GFE forms stated that the fees and interest rates listed were just estimates. The federal TILA disclosure statement signed at closing listed the interest rate, the finance charge, and the payment schedule. Both the second GFE form and the HUD-1 form disclosed the yield spread premium. Lastly, the HUD-1 form disclosed that TLC would receive a processing fee of $550.00 and an administrative fee of $260.00.

On April 27, 2012, the district court granted BankUnited's motion to dismiss in part, dismissing the Wanes' claim for rescission under the TILA because the assignment of the mortgage from BankUnited FSB to the FDIC was involuntary, and BankUnited was a subsequent assignee. It held that when an involuntary assignment occurs, 15 U.S.C. § 1641(a) protects all subsequent assignees from liability. The district court, however, determined that the complaint was sufficient to state a claim to quiet title.

On November 30, 2012, BankUnited filed a motion for summary judgment, arguing that the Wanes could not maintain a cause of action to quiet title because

4

they did not sufficiently establish their own title and failed to demonstrate that BankUnited's encumbrance was invalid.  On December 17, 2012, the Wanes filed their own motion for summary judgment, in which they argued that BankUnited lacked standing to challenge their claim to quiet title because there was no effective transfer of the note from TLC to BankUnited FSB. The Wanes maintained that Jennifer Jones, although a corporate officer at TLC, was not a vice-president with authority to endorse the allonge.[4] But even if she had authority to endorse the allonge, the transfer was still ineffective because the allonge was not properly affixed to the note.

On February 22, 2013, the district court denied the Wanes' motion for summary judgment on the claim to quiet title. In the same order, the district court granted summary judgment for BankUnited on its counterclaims against the Wanes for breach of contract and for money lent in the original principal amount of $400,000.00, concluding  that the Wanes had a valid contract with BankUnited, that the Wanes breached that contract by not making timely required payments,

---

4        An allonge is "a piece of paper annexed to a negotiable instrument or promissory note, on which to write endorsements for which there is no room on the instrument itself. Such must be so firmly affixed thereto as to become a part thereof." *Wells Fargo Bank, N.A. v. Bohatka,* 112 So.3d 596, 598 (Fla. 1st DCA 2013) (quoting *Booker v. Sarasota, Inc.* 707 So.2d 886, 887 n.* (Fla. 1st DCA 1998)). "Although Florida's Uniform Commercial Code does not specifically mention an allonge, the Code provides that '[f]or the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument.'" *See Isaac v. Deutsche Bank Nat. Trust Co.*, 74 So.3d 495, 496 n.1 (Fla. 4th DCA 2011) (quoting Fla. Stat. § 673.2041(1)).

and that BankUnited incurred damages.

## II

As we explain below, dismissal of the rescission claim was appropriate because the Wanes did not plead allegations that would provide a right to rescind the mortgage agreement.

"We review *de novo* a Rule 12(b)(6) dismissal of a complaint for failure to state a claim." *Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true, and the court limits its consideration to the pleadings and exhibits attached thereto." *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). "[P]ro se pleadings are held to a less strict standard than pleadings filed by lawyers and thus are construed liberally." *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008). This liberal construction, however, "does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted), *overruled on other grounds by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). Additionally, we may affirm the district court on any ground supported by the record, "regardless of whether that ground was relied upon or even considered by the district court." *Kernel Records Oy v.*

*Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Factual allegations in a complaint "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true . . . ." *Bell Ad. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A plaintiff does not have to provide detailed factual allegations to support the claim, but he must provide more "than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The TILA requires lenders of home mortgages to make certain disclosures to the mortgagor before the loan is consummated. 15 U.S.C. § 1631. *See also* 12 C.F.R. § 226.17. The material disclosures are the annual percentage rate, the finance charge, the amount financed, the total of payments, the payment schedule, and the disclosure limitations referred to in 12 C.F.R. §§ 226.32(c)-(d) and 226.35(b) (2). *See* 12 C.F.R. § 226.23 n.48.

Under the TILA, a creditor who fails to comply with the disclosure requirements may be held liable. *See* 15 U.S.C. § 1640(a). In relevant part, 15 U.S.C. § 1635 describes a mortgagor's right to rescind in the event that a creditor violates TILA disclosure requirements. For such a violation to give rise to a cause of action, it must be "apparent on the face of the disclosure statement." *Id.* §

1641(a). "[A] violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required by this subchapter." *Id.*

The district court did not have to determine the applicability of 15 U.S.C. § 1641 to this case because the Wanes did not establish, as a threshold matter, that they had the right to rescind.[5] To support their claim to rescind, the Wanes alleged that they were not informed that the "real lender" was BankUnited FSB, that there were improper disclosures of the interest rate, the yield spread premium, the payments schedule, and the processing and administrative fees. They also alleged that they had exercised their right to rescind by mailing a notice of rescission to TLC and carbon copied BankUnited.

The allegation that the Wanes were not informed that the real lender was BankUnited FSB did not support a right to rescind. First, it was not a material disclosure under the TILA. *See* 12 C.F.R. § 226.23 n.48 ("The term 'material disclosures' means the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total of payments, the payment schedule,

---

5    Thus, we do not have to decide whether 15 U.S.C. § 1641 would bar someone like Mr. Wane from going forward—if he had sufficiently pled a right to rescind under the TILA—because the loan had been involuntary assigned from BankUnited FSB to the FDIC and subsequently assigned from the FDIC to BankUnited.

8

and the disclosures and limitations referred to in §§ 226.32(c) and (d) and 226.35(b)(2)"). Second, the record indicates that the Wanes were apprised of the fact that the mortgage was financed by BankUnited FSB: the Wanes complaint acknowledged that the funding came from BankUnited FSB, and the complaint incorporated the promissory note with the heading of "BankUnited" in bold lettering.

Neither did the allegations of improper disclosures support the right to rescind. The allegation that the interest rate was improperly disclosed did not give rise to a right to rescind because the second TILA disclosure form properly disclosed the interest rate. This form was signed by Mr. Wane on the day he executed the note and mortgage. The allegation that the yield spread premium was improperly disclosed is likewise insufficient because it was not a material disclosure under the TILA. But even if it were a material disclosure, both the second GFE form and the HUD-1 form properly disclosed the yield spread premium. The allegation that the payment schedule was improperly disclosed did not support the right to rescind because it was accurately noted on the second TILA disclosure form signed at closing. Finally, the allegation about the processing and administrative fees did not support the right to rescind because these fees were not a material disclosure required under the TILA, and in any event, the record shows that they were properly disclosed on the HUD-1 form.

9

Although the allegation that the Wanes had exercised their right to rescind by mailing a notice of rescission was sufficient to contemplate a right to rescind, no allegations in the complaint provided a sufficient factual basis for rescission. So though the district court dismissed the rescission claim on improper grounds, it ultimately reached the correct conclusion, which is a sufficient basis for affirmance. *See Kernel Records Oy*, 694 F.3d at 1309.

## III

The district court also properly denied the Wanes' motion for summary judgment on the quiet title claim and granted BankUnited's motion for summary judgment for breach of contract and money lent.

We review an order granting summary judgment *de novo*. *Morales v. Zenith Ins. Co.*, 714 F.3d 1220, 1226 (11th Cir. 2013). "Summary judgment is appropriate only when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c)). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We draw all reasonable inferences in favor of and view the evidence in the light most favorable to the non-moving party. *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005).

## A

10

On the claim to quiet title, Mr. Wane argues that BankUnited did not have a legally enforceable interest in the note because Jennifer Jones, who served as secretary for TLC, did not have authority to endorse it. Alternatively, he argues that the allonge was not properly attached to the note.

Florida law allows an action to quiet title where "a person or corporation not the rightful owner of land has any conveyance or other evidence of title thereto, or asserts a claim . . . which may cast a cloud on the title of the real owner . . ." Fla. Stat. § 65.061(2). If the plaintiff succeeds on the claim to quiet title, the court will enter judgment in favor of the plaintiff and cancel any clouds to the title. *Id.* § 65.061(4).

Another Florida statutes governs a corporation's ability to transfer a mortgage:

> Any corporation may execute instruments conveying, mortgaging, or affecting any interest in lands by instruments sealed with the common or corporate seal and signed in its name by its president or any vice president or chief executive officer. Assignments, satisfactions, or partial releases of mortgages and acquittances for debts may be similarly executed by any corporate officer.

Fla. Stat. § 692.01. A promissory note may be used to secure an interest on a home mortgage, and unless there is a plain and clear agreement to the contrary, both the mortgage and promissory note are assigned as one. *See WM Specialty Mortg., LLC v. Salomon,* 874 So.2d 680, 682 (Fla. 4th DCA 2004) ("[A] mortgage is but an incident to the debt, the payment of which it secures, and its ownership follows the

11

assignment of the debt. If the note or other debt secured by a mortgage be transferred without any formal assignment of the mortgage, or even a delivery of it, the mortgage in equity passes as an incident to the debt . . . ."). A promissory note "is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." Fla. Stat. § 673.2031(1).

BankUnited proffered sufficient evidence establishing Ms. Jones' status as secretary of TLC.  The Wanes sought to overcome this evidence by proving that Ms. Jones was not a vice-president with the requisite authority to assign the note. Whether Ms. Jones was secretary or vice-president at the time of the assignment, however, is not a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). Under § 692.01 "assignments, satisfactions, or partial releases of mortgages and acquittances for debts may be similarly *executed by any corporate officer.*" (emphasis added). As a corporate officer, Ms. Jones was authorized to assign the mortgage and promissory note.

Nor does the record support Mr. Wane's contention that the allonge was not properly affixed to the promissory note. The allonge itself purported to be affixed

to the note, such that it became a part of it. The argument that the allonge was not sufficiently affixed to the note is only supported by Mr. Wane's own affidavit. But nothing in the record indicates that Mr. Wane had any personal knowledge of the affixation of the allonge to the note. *See* Fed.R.Civ.P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). BankUnited therefore proffered sufficient evidence to establish its enforceable interest in the note.

**B**

With BankUnited's enforceable interest on the loan clearly established, the district court properly granted BankUnited's motion for summary judgment upon finding that the Wanes breached the terms of the promissory note. In addition to several arguments that were raised for the first time in his motion for reconsideration,[6] Mr. Wane argues that BankUnited's failure to pay documentary

---

6       Mr. Wane argues that the district court relied on the wrong version of Fla. Stat. § 692.01 and that the district court improperly considered Jennifer Jones' and Patricia Fallman's affidavits. Mr. Wane presented these arguments for the first time to the district court in his motion for reconsideration. That motion was not designated in the notice of appeal, and we thus do not have jurisdiction to review it. *See Hill v. BellSouth Telecomms., Inc.*, 364 F.3d 1308, 1313 (11th Cir. 2004) (noting that this Court has appellate jurisdiction over only "those judgments, orders, or portions thereof which are specified in the appellant's notice of appeal") (internal quotation marks omitted). Moreover, the order denying Mr. Wane's motion involves a separate and discrete legal issue that discourages a liberal construction of Mr. Wane's notice of

13

stamp taxes on the accrued interest and TLC's alleged lack of licensure rendered the note unenforceable. None of Mr. Wane's arguments, however, contest the fact that the Wanes stopped making payments, that the note included an acceleration clause that put them in default, and that the full amount became immediately payable to BankUnited.

Under Florida law, the party entitled "to enforce a negotiable instrument, such as a promissory note, is the holder of the instrument," who is either the party in possession when it is payable to bearer or the party that the instrument identifies. *Harvey v. Deutsche Bank Nat.* Trust Co., 69 So.3d 300, 303 (Fla. 4th DCA 2011). Regarding payment on a negotiable instrument, "if a due date with respect to principal has been accelerated, the instrument becomes overdue on the day after the accelerated due date." Fla. Stat. § 673.3041(2)(c).

Both parties agree that BankUnited has paid the documentary stamp tax on the loan's original principal amount of $400,000. The mortgage agreement between BankUnited and the Wanes, however, contains a negative amortization feature that has raised the principal amount to $429,322.12. *See Black's Law Dictionary* (9th ed. 2009) (defining "negative amortization" as "an increase in a

---

appeal. *See id.* ("[T]his circuit also embraces a policy of liberal construction of notices of appeal when (1) unnoticed claims or issues are inextricably intertwined with noticed ones and (2) the adverse party is not prejudiced.") (internal quotation marks omitted).

loan's principle balance caused by monthly payments insufficient to pay accruing interest"). *See also In re Club Assocs.*, 107 B.R. 385, 398 (Bankr. N.D. Ga. 1989) ("Negative amortization, which is also described as 'deferral of interest' and 'accrual of interest,' can be defined as a provision wherein part or all of the interest on a secured claim is not paid currently but instead is deferred and allowed to accrue.").

Mr. Wane contends that BankUnited's failure to pay documentary stamp taxes on the increased principal amount of $29,322.12 renders the entire note unenforceable under Fla. Stat. § 201.08(1)(b). This statute provides, in relevant part, as follows:

> The mortgage, trust deed, or other instrument shall not be enforceable in any court of this state as to any such advance unless and until the tax due thereon upon each advance that may have been made thereunder has been paid.

Florida courts have held that a promissory note secured by a mortgage cannot be enforced where taxes have not been paid on future advances. *See Glenn Wright Homes (Delray) LLC v. Lowy,* 18 So.2d 693, 696 (Fla. 4th DCA 2009) (noting that § 201.01(1) "contains no prohibition against enforcement for failure to pay the tax on a promissory note, *other than one securing future advances*") (emphasis added).

Mr. Wane is incorrect, however, in associating the mortgage's negative amortization feature with a future advance authorized by Fla. Stat. § 697.04.[7] A future advance clause is a "contractual term in a security agreement covering additional loaned amounts on present collateral or collateral to be acquired in the future, regardless of whether the secured party is obliged to make the advances." *Black's Law Dictionary* (9th ed. 2009). *See also Industrial Supply Corp. v. Bicker*, 306 So.2d 133, 135 (Fla. 2d DCA 1975) ("[A] future advances mortgage may be cast into one or the other of two forms. (1) It may name a certain total sum as a present loan although in truth that amount, by extrinsic agreement which may be oral, includes advances to be made later on. Or (2) it may state that it secures advances to be made in the future but leave the amounts, and sometimes their character, indefinite.") (internal quotation marks omitted); *Nack Holding, LLC v. Kalb*, 13 So.3d 92, 96 (Fla. 3d DCA 2009) ("A mortgage used to secure future advances will contain an express 'future advances' provision consistent with

---

7     "Any mortgage or other instrument given for the purpose of creating a lien on real property, or on any interest in a leasehold upon real property, may, and when so expressed therein shall, secure not only existing indebtedness, but also such future advances, whether such advances are obligatory or to be made at the option of the lender, or otherwise, as are made within 20 years from the date thereof, to the same extent as if such future advances were made on the date of the execution of such mortgage or other instrument, although there may be no advance made at the time of the execution of such mortgage or other instrument and although there may be no indebtedness outstanding at the time any advance is made. Such lien, as to third persons without actual notice thereof, shall be valid as to all such indebtedness and future advances from the time the mortgage or other instrument is filed for record as provided by law." Fla. Stat. § 697.04(1).

16

section 697.04, Florida Statutes . . . .”). Because the unenforceability language in §

201.08(1)(b) only covers the failure to pay taxes on future advances, *see Glenn*

*Wright Homes (Delray) LLC*, 18 So.2d at 696, Mr. Wane’s contention that

BankUnited has failed to pay the documentary stamp taxes on an increased

principal resulting from negative amortization does not create a genuine issue of

material fact regarding BankUnited’s enforceable interest.

Nor does the assertion that TLC was not licensed create a genuine issue

precluding summary judgment in BankUnited’s favor. The only piece of evidence

presented by the Wanes in support of this allegation is a certificate from the Office

of Financial Regulation that shows a particular TLC mortgage lender branch

(#MLB0600529) had its license terminated on July 28, 2006. BankUnited,

however, has provided evidence that the relevant TLC mortgage lender license

(#ML0700341) with a business location of 4890 West Kennedy Boulevard #260,

Tampa, Florida 33609—where the mortgage was brokered—was indeed active

when the mortgage and promissory note were executed. Because TLC was licensed

at the time of closing, we need not pass judgment on the district court’s ruling that

a note from an unlicensed broker would nonetheless be enforceable.

Ultimately, there is no dispute that the Wanes defaulted on their loan, which

was secured by the promissory note. The district court properly granted summary

17

judgment to BankUnited because the Wanes were liable for failure to fulfill their obligations under the promissory note.

## IV

For the foregoing reasons, we affirm the district court's dismissal of the Wanes' claim for rescission, denial of the Wanes' motion for summary judgment, and grant of BankUnited's motion for summary judgment.

**AFFIRMED.**